IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES TERRENCE STEVENSON | CIVIL DIVISION |
| Plaintiff, | Civil Action No. |
| PENNSYLVANIA STATE POLICE; *Individual Defendants* DAVID ELLIS; WILLIAM COLVIN; ALAN TREES; AARON MARTIN; AND JUSTIN TKACIK. | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

Plaintiff, James Terrence Stevenson ("Mr. Stevenson"), by and through his undersigned counsel, Joseph D. Pometto, hereby files this Complaint against Defendants and states asfollows:

## PARTIES

1. Mr. Stevenson is an African-American male and current Trooper in the PA State Police.

2. Mr. Stevenson is an individual and a citizen of the Commonwealth of Pennsylvania.

3. Defendant David Ellis ("Defendant Ellis") was the Field Training Officer ("FTO") assigned to Mr. Stevenson. Other troopers perceived Trooper Ellis as a good trooper at the barracks because he recorded a high statistical score for arrests and convictions. He had the power to direct Mr. Stevenson's actions, dictate conduct, and direct investigations of criminal matters.

1

4. Defendant William Colvin ("Corporal Colvin") was in a supervisory and leadership role and was informed of Trooper Ellis's misconduct and other discriminatory issues and took no steps to alleviate the situation or assist Trooper Stevenson.

5. Defendant Justin Tkacik ("Corporal Tkacik") was in a supervisory and leadership role and was informed of Trooper Ellis's misconduct and other discriminatory issues and took no steps to alleviate the situation or assist Trooper Stevenson.

6. Defendant Alan Trees ("Lieutenant Trees") was in a supervisory and leadership role over Trooper Stevenson and he used his power and influence to retaliate against Trooper Stevenson for reporting misconduct perpetrated by Trooper Ellis.

7. Defendant Aaron Martin ("Sergeant Martin") was in a supervisory and leadership role over Trooper Stevenson and he directed subordinates to give Trooper Stevenson a negative notation in retaliation for Trooper Stevenson reporting misconduct and discriminatory behavior of other troopers.

8. The PA State Police is an agency of the Commonwealth of Pennsylvania. The PA State Police is a full-service law enforcement agency that handles both traffic and criminal law enforcement.

9. All of the named Defendants, and the Plaintiff, are and were, at all relevant times, employees of the Pennsylvania State Police and were acting on behalf of the Pennsylvania State Police as a governmental entity, organization and employer.

**JURISDICTION AND VENUE**

10. The causes of action which form the basis of this matter arising under section 1983, pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1333.

11. Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C.

§2000(e)-5(f).

12. Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

## FACTS

12. On or around January 18, 2021, Mr. Stevenson began his first shift with the Pennsylvania StatePolice ("PA State Police") at PSP Chambersburg.

13. Defendant Ellis called Mr. Stevenson his "black pupil" during their first week together.

14. On or around January 25, 2021, Defendant Ellis and Mr. Stevenson responded to a domestic call during which the actor in the call was arrested pertaining to the domestic violence report.

15. Defendant Ellis initiated the interaction with the suspected criminal actor.

16. Defendant Ellis also initiated a DUI investigation of the actor.

17. No Standardized Field Sobriety Tests ("SFSTs") were performed at the scene, and Mr. Stevenson observed no visible signs of impairment.

18. Despite this, Defendant Ellis ordered Mr. Stevenson to read the actor a DL26B form requesting a legal blood draw.

19. When Mr. Stevenson voiced his confusion regarding this order, Defendant Ellis ordered him to write up a report, claiming the suspect had marijuana on his person.

20. For fear of retaliation at the PSP barracks, Mr. Stevenson did not voice his concerns.

21. Instead, he completed half of the report as it pertained to the domestic call, but did not complete the second half, ordered by Defendant Ellis, pertaining to the DUI.

22. When Mr. Stevenson voiced his confusion on the report to Defendant Ellis, Defendant Ellis ordered Mr. Stevenson to write up the report as a normal DUI – effectively a lie.

23. On or about February 5, 2021, Defendant Ellis observed a blue Ford Escape on private property at a tire shop with its flashers on. He and Mr. Stevenson investigated.

24. In the vehicle was a Hispanic male who indicated he was working on the vehicle, and he indicated that he owned the shop and property the car was located on.

25. This male was also drinking alcohol while working on the vehicle.

26. Neither Defendant Ellis nor Mr. Stevenson observed the Hispanic male operate the vehicle, nor did they see the vehicle move, nor were the keys in the ignition of the vehicle.

27. Despite this, Defendant Ellis still ordered Mr. Stevenson to perform SFSTs on the Hispanic male.

28. When Mr. Stevenson voiced this concern to Defendant Ellis, Defendant Ellis admitted that, at most, they had a public drunkenness case, but Mr. Stevenson could add it as a statistic for him since he was new.

29. Mr. Stevenson did not complete this report considering the underlying facts.

30. Multiple instances during Mr. Stevenson's time with Defendant Ellis did Mr. Stevenson observe Defendant Ellis say how minorities and females do not deserve to be troopers.

31. Defendant Ellis also made comments on how he hates all "niggers" in the presence of Mr. Stevenson.

32. When Mr. Stevenson's time with Defendant Ellis came to an end, the preceding two DUI reports were left outstanding and not completed.

33. On or about March 1, 2021, Mr. Stevenson began his second coaching period with Trooper Manzo.

34. At no time did Trooper Manzo place Mr. Stevenson in any unethical situations, nor did Trooper Manzo make any derogatory and racist comments similar to Defendant Ellis.

35. Mr. Stevenson informed Trooper Manzo of the outstanding DUI reports in his list.

36. During Mr. Stevenson's second coaching period, the PA State Police performed an Audit of Paperwork at the PSP Chambersburg barracks.

37. Corporal Tkacik and Corporal Colvin approached Mr. Stevenson regarding the outstanding DUI reports from his time with Defendant Ellis.

38. Mr. Stevenson informed Corporal Tkacik and Corporal Colvin of the underlying ethical issues and potential violation of the defendants' rights.

39. Both these men informed Mr. Stevenson that they would assist him in resolving these issues.

40. No help or guidance ever came.

41. On or about April 1, 2021 Mr. Stevenson's coaching periods ended, and no assistance with the reports came.

42. During this time, Mr. Stevenson had three probationary evaluations that all resulted in a satisfactory conclusion, despite never having any issues with his job performance and paperwork.

43. In the approximate six months since requesting assistance regarding the DUI reports and Defendant Ellis's actions, Mr. Stevenson has yet to receive any assistance from the PA State Police regarding the report.

44. On or about October 14, 2021, Sergeant Timothy Janosco ("Sgt. Janosco") contacted Mr. Stevenson to interview him as part of the investigation. It is believed and therefore averred this investigation is into misconduct committed by Trooper Ellis..

45. On or about October 19, 2021, Sgt. Janosco and Sargeant Barbour interviewed Mr. Stevenson.

46. During this interview, Mr. Stevenson detailed Defendant Ellis committing multiple EEO violations.

47. Mr. Stevenson expressed his fears of retaliation if he were to report these violations.

48. Mr. Stevenson feared that, given Defendant Ellis's status and reverence at the Chambersburg Station, that Mr. Stevenson would not be believed.

49. Following this interview, on or about October 19, 2021 at approximately 11:00am, Defendant Ellis approached Mr. Stevenson in the patrol room of the PSP Chambersburg and attempted to solicit information from Mr. Stevenson regarding the active investigation into Defendant Ellis's conduct.

50. This encounter intimidated Mr. Stevenson, and Mr. Stevenson declined to comment on the investigation.

51. On or about October 21, 2021, at approximately 10:45 pm, Corporal Walter Brunner ("Cpl. Brunner") contacted Mr. Stevenson via his personal cellphone to advise Mr. Terrrence to remain at the station to complete two overdue supplemental reports.

52. During this call, Cpl. Brunner advised Mr. Stevenson that he was contacted by Sergeant Aaron Martin (Chambersburg Staff Sergeant), who was contacted by Lieutenant Alan Trees (Chambersburg Station Commander), who was contacted by Captain Matthew Nickey

6

(Troop-H Commander) regarding these two overdue supplemental reports.

53. At approximately 11:15pm on October 21, 2021, Mr. Stevenson met with Cpl. Brunner in Cpl. Brunner's office. During this meeting, Mr. Stevenson detailed the arrests made during his time with Defendant Ellis. He expressed his integrity concerns regarding these arrests, and how he did not feel comfortable lying to justify the reasons for these traffic stops. Mr. Stevenson made known to Cpl. Brunner that these incidents were brough to Cpl. Colvin and Cpl. Tkacik's attention back in March 2021, with no results.

54. Despite these concerns and the facts Mr. Stevenson laid out, Cpl. Brunner nonetheless directed Mr. Stevenson to complete the reports.

55. Cpl. Brunner made clear that Sgt. Martin directed Cpl. Brunner to give a negative supervisor notation to Mr. Stevenson for failure to submit these reports in a timely manner. Mr. Stevenson never received such a negative notation.

56. On or about November 15, 2021, Mr. Stevenson needed to submit his Probationary Trooper General Investigative Report ("Investigative Report") to get off his probationary period.

57. On that date, Mr. Stevenson met with Lt. Trees in his office to review the GI evaluation.

58. Lt. Trees advised Mr. Stevenson that he would recommend the PA State Police retain Mr. Stevenson as a trooper but that he would recommend extending his probation due to the two overdue supplemental reports and alleged discrepancy in his report writing.

59. Mr. Stevenson never received any notice of discrepancy in his report writing prior to this meeting, nor did he ever receive any counseling regarding his report writing.

60. Mr. Stevenson expressed his concerns over these reports, the same concerns he

expressed time and time before – to Lt. Trees, who related that Mr. Stevenson's situation never should have happened.

61.     Despite this, on or about November 16, 2021 Mr. Stevenson still received yet another email regarding these overdue reports.

62.     On or about December 15, 2021 Mr. Stevenson filed Department Internal Affairs Investigation on Lt. Trees, Sgt. Martin, and Cpl Brunner regarding the retaliation Mr. Stevenson experienced as a result of his refusal to comply with the unethical orders to lie on his reports.

63.     During his meeting with Internal Affairs regarding this investigation, Mr. Stevenson was first made aware of a negative write-up in his file – one he never received a copy of or signed off on.

64.     This notation was placed in Mr. Stevenson's file without his knowledge and in direct violation of PA State Police Procedure regarding negative notations.

65.     On or about February 2, 2022, Mr. Stevenson received an email from Lt. Trees directing Mr. Stevenson to complete a 201, a form of discipline for a report that was lost by the District Attorney's Office. Mr. Stevenson did not violate any department regulations regarding this report, nor did he ever receive disciplinary actions from supervisors, except for Lt. Trees.

66.     On or about February 2, 2022, Mr. Stevenson reached out to the Member Assistance Program ("MAP") regarding the strain this harassment and targeting had on his mental health. He spoke with a MAP Member for approximately two hours.

67.     This targeting and harassing behavior has caused Mr. Stevenson severe anxiety, fear from coming into work, and loss of sleep.

68.     Mr. Stevenson believes that his white supervisors are retaliating against him for speaking his mind regarding the unethical and unconstitutional actions taken by Defendant Ellis

that Mr. Stevenson observed.

69. The PA State Police, including Defendants who had power, never took corrective action against Trooper Ellis. He did not lose any pay, benefits, and was not terminated. The PA State Police, including all Defendants, continued to allow Defendant Ellis to perpetuate a hostile work environment.

70. Each of these Defendants was well-aware of the discriminatory actions described within this Complaint. Mr. Stevenson took painstaking measures to make each aware. Yet, none of the Defendants took any action to correct or otherwise implement policies to dissipate the discrimination and hostility.

71. The PA State Police department, through its supervisors and policymakers, had a well-settled custom of race discrimination and harassment, which continues during Mr. Stevenson's tenure with the department. Defendants individually and collectively created and continue to foster the well-settled custom of race discrimination and harassment. The PA State Police department did not, and still does not, have a policy in place that protects against race discrimination. Defendants individually and collectively are responsible for this failure.

72. Mr. Stevenson's complaining of race discrimination/hostile work environment was a motivating and/or determinative factor in Defendants' retaliatory treatment of Mr. Stevenson, including the hostile work environment to which Mr. Stevenson was subject.

73. Defendants failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective action and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

74. The retaliatory actions taken against Mr. Stevenson after he complained of discriminatory conduct would have discouraged a reasonable employee from further

complaining of discrimination.

75. The discriminatory and retaliatory conduct of Defendants, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Mr. Stevenson believe that the conditions of employment had been altered and that a hostile work environment existed.

76. As a direct and proximate result of the discriminatory and retaliatory conduct of Defendants, Mr. Stevenson has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss ofself-esteem, mental anguish, and loss of life's pleasure, the full extent of which is not known at this time.

77. Defendants acted with malice, reckless indifference, and/or deliberate indifferenceto Mr. Stevenson's protected rights.

## COUNT I (Section 1983 and 1981)[2]
### Discrimination, Hostile Work Environment, Conspiracy
*Plaintiff v. Individual Defendants*

78. Plaintiff hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

79. Defendants' discriminatory and retaliatory actions, as set forth herein, deprived Mr. Stevenson of equal protection under the law as guaranteed by the Fourteenth Amendment of the United States Constitution.

80. As a result of Defendants' actions, Defendants have denied Mr. Stevenson the right to the same terms, conditions, privileges and benefits of their employment with the Pennsylvania State Police, in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983.

81. Defendants' violation of the constitution included policies, practices, and/or customs to treat black employees in the PA State Police less favorably than male employees, which was committed, directed, implemented, and/or ratified by officials of Defendants or Defendants in supervisory capacities with policymaking and decision-making authority.

82. As a direct and proximate result of Defendants's acts and conduct, which caused and continue to cause Mr. Stevenson to be denied equal protection under the law, Mr. Stevenson has suffered and will suffer those injuries, damages, and losses alleged herein and has incurred and will incur attorneys' fees.

83. The wrongful acts and conduct of Defendants were done with deliberate indifference to the statutory and constitutional rights of Mr. Stevenson.

84. The actions of the Defendants, individually and collectively, all of which were taken under color of law.

85. Mr. Stevenson suffered adverse employment consequences, specifically, Defendants retaliated by failing to train and promote Mr. Stevenson, frivolous notations on his record, and harassment from his superiors.

86. The PA State Police, by and through its supervisor and policymakers, had contemporaneous knowledge of the incidents of racial discrimination and harassment that Mr. Stevenson faced, and the inaction by PA State Police and its supervisors (Defendants) communicated messages of approval to the offending subordinates.

87. The Defendants participated in violating Mr. Stevenson's rights and/or they directed others to violate them, and/or they had knowledge of and acquiesced in their subordinates' violation.

88. This severe and pervasive environment continued throughout Mr. Stevenson's

employment. The PA State Police promised aid and guidance in handling his allegations regarding Defendant Ellis. The PA State Police never did.

89. Upon information and belief, Defendants were in agreement to not investigate complaints of discrimination within the force. This was an unlawful violation of Mr. Stevenson's Fourteenth Amendment right to equal protection in the workplace. The Defendants acted in furtherance of this scheme by quickly investigating other incidents of subordination in the force while deliberately not investigating EEO violations. Mr. Stevenson sustained emotional and financial damages as a result of the Defendants' conspiracy.

90. Mr. Stevenson suffered other emotional damages, including a formal diagnosis of anxiety. This includes physical manifestations, such as loss of sleep, loss of appetite, loss of intimacy with his partner, prolonged period of depression.

## COUNT II - FIRST AMENDMENT SECTION 1983
*Retaliation*
*Plaintiff v. Individual Defendants*

91. Mr. Stevenson hereby incorporates all allegations contained in the above-mentioned Paragraphs fully as if they were set forth at length.

92. The First Amendment through the Fourteenth Amendment and Section 1983, prohibits the State and local government actors from punishing employees for speaking out on matters of public concern.

93. Serving as a police officer constitutes the type of governmental benefit or privilege the deprivation of which can trigger First Amendment scrutiny.

94. Mr. Stevenson's comments about racial discrimination and profiling within the PA State Police are a matter of public concern and are thus protected speech under the First Amendment.

95. Defendants, acting under color of law and by and through their agents, servants, and/or employees, engaged in retaliation against Mr. Stevenson due to his exercise of protected and established constitutional right to freedom of speech.

96. The acts of Defendants are in violation of the United States Constitution and justify declaratory relief, including declaring that the policies, practices, and/or customs of Defendants described herein violate Federal law, along with the award of attorneys' fees and costs under 42 U.S.C. § 1988.

97. Mr. Stevenson made a formal petition; that is, he made internal complaints and aided an internal affairs investigation that are, and were, at all relevant times protected by the First Amendment.

98. Mr. Stevenson was retaliated against for informing his superiors of the racial hostility, bias, and animosity that existed with the PA State Police.

99. Mr. Stevenson was also subjected to harsher discipline than his white counterparts for the same exact offense of incomplete reports.

## **RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection withDefendants' improper conduct, and specifically prays that the Court grant the following relief toPlaintiff by:

a) Declaring the acts and practices complained of herein to be in violation of Section 1983;

b) Enjoining and permanently retraining the violations alleged herein;

c) Entering judgment against the Defendants and in favor of the Plaintiff in an

amount to be determined;

d) Awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

e) Awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasure, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

f) Awarding punitive damages to Plaintiff;

g) Awarding Plaintiff such other damages as are appropriate under Title VII, Section 1983, and the PHRA;

h) Awarding Plaintiff the costs of suit, expert fees, other disbursements, and reasonable attorney's fees; and,

i) Granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

                                                  Respectfully submitted

                                                  */s/ Joseph D. Pometto*

Dated: March 24, 2022                       Joseph D. Pometto, Esq.
                                                  JOE POMETTO LAW
                                                  27 W. Main St.
                                                  Carnegie, PA
                                                  (t) 412-593-4529
                                                  *Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

Plaintiff certifies that the foregoing **PLAINTIFF'S COMPLAINT** was served upon counsel listed via NextGen court filing system:

Dated: March 24, 2022

*/s/ Joseph D. Pometto*
Joseph D. Pometto, Esq.
27 W. Main St.
Carnegie, PA
(t) 412-593-4529
*Counsel for Plaintiff*