IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES TERRENCE STEVENSON,** | : | CIVIL ACTION NO. 1:22-CV-445 |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| **WILLIAM COLVIN, ALAN TREES,** and **AARON MARTIN,** | : | |
| Defendants | : | |

**MEMORANDUM**

Plaintiff James Terrence Stevenson brings discrimination and retaliation claims against several of his superiors within the Pennsylvania State Police, specifically defendants Corporal William Colvin, Lieutenant Alan Trees, and Sergeant Aaron Martin.[1] Defendants move to dismiss Trooper Stevenson's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. We will grant defendants' motion as to Trooper Stevenson's discrimination claims but deny it as to his retaliation claims.

**I.    Factual Background & Procedural History**

Stevenson is an African American male and current Trooper with the Pennsylvania State Police ("PSP"). (See Doc. 15 ¶ 1). Trooper Stevenson began his probationary period at PSP's barracks in Chambersburg, Pennsylvania, on January

---

[1] Trooper Stevenson's initial complaint named Trooper David Ellis and Corporal Justin Tkacik as defendants. (See Doc. 1). The amended complaint drops any claims against Corporal Tkacik. (See Doc. 15). We dismissed Trooper Ellis as a defendant for failure to serve the summons and complaint within 90 days as required under Federal Rule of Civil Procedure 4(m). (See Doc. 24).

18, 2021. (See id. ¶ 12).[2] Trooper Stevenson describes his probationary period as being divided into two "coaching periods," during which he was assigned to different field training officers. (See id. ¶¶ 3, 12, 33). He spent his first coaching period working with, and under the supervision of, Trooper David Ellis. (See id. ¶ 3).

Trooper Ellis was well regarded in the Chambersburg barracks for his impressive record of arrests and convictions, (see id. ¶ 3), but Trooper Stevenson found Trooper Ellis to be less than a model officer. Trooper Stevenson's misgivings about Trooper Ellis relate primarily to two incidents that occurred during Trooper Stevenson's coaching period. (See id. ¶¶ 14-28; see also id. ¶¶ 33, 36). On January 25, 2021, Troopers Stevenson and Ellis responded to a domestic violence call and ultimately arrested the subject. (See id. ¶ 14). The amended complaint's account of this arrest is unclear. What is clear is Trooper Stevenson was responsible for writing up a report documenting the arrest, and Trooper Ellis directed Trooper Stevenson to describe the arrest in the report as being related to driving under the influence ("DUI"). (See id. ¶¶ 19-22). Trooper Stevenson viewed this directive as an instruction to lie in the report and declined to complete the portion of the report related to the supposed DUI. (See id. ¶¶ 21-22).

On February 5, 2021, Troopers Ellis and Stevenson investigated a vehicle they observed using its flashers while parked on the premises of a tire shop. (See id. ¶ 23). Inside the vehicle, they found a man of Hispanic ethnicity who informed

---

[2] Trooper Stevenson's amended complaint includes two paragraphs bearing the number 12. This citation refers to the second paragraph 12.

the troopers he owned the tire shop and was in the process of working on the vehicle. (See id. ¶ 24). The man was also drinking alcohol. (See id. ¶ 25). Trooper Ellis ordered Trooper Stevenson to conduct a field sobriety test on the man. (See id. ¶ 27). According to Trooper Stevenson, neither he nor Trooper Ellis observed the man operate the vehicle, and there was no key in the vehicle's ignition. (See id. ¶ 26). Trooper Stevenson expressed concern to Trooper Ellis over the propriety of conducting a sobriety test under the circumstances, at which point Trooper Ellis allegedly admitted the facts "at most" supported a public-drunkenness charge. (See id. ¶ 28). Stevenson again declined to complete a report documenting the encounter. (See id. ¶¶ 29, 32, 53).

In addition to the above incidents, Trooper Stevenson claims Trooper Ellis made several offensive comments in Trooper Stevenson's presence. Trooper Ellis allegedly expressed animus towards African Americans and referred to African Americans using an egregious racial slur. (See id. ¶ 31). He disparaged the fitness of women and members of minority groups to serve in PSP. (See id. ¶ 30). Trooper Ellis also insisted on calling Trooper Stevenson his "black pupil" during their first week working together. (See id. ¶ 13).[3]

Trooper Stevenson's coaching period with Trooper Ellis ended on March 1, 2021, and Trooper Stevenson commenced a second period with a different trooper. (See id. ¶¶ 32-33). During this second period, two of Trooper Stevenson's superiors, Corporals Tkacik and Colvin, approached Trooper Stevenson about the incomplete

---

[3] Trooper Stevenson's amended complaint includes two paragraphs identified as paragraph 13. This citation refers to the second paragraph 13.

reports.  (See id. ¶¶ 4, 37).  Trooper Stevenson informed the corporals of his concern Trooper Ellis's conduct breached ethical principles and potentially violated the rights of the two subject individuals.  (See id. ¶ 38).  Corporals Tkacik and Colvin reportedly assured Trooper Stevenson they would help him resolve the matter but apparently never followed through on those assurances.  (See id. ¶¶ 39-41, 43).

Several months later, a pair of investigators—presumably with PSP—interviewed Trooper Stevenson regarding what he understood to be an investigation into Trooper Ellis's conduct.  (See id. ¶¶ 44-45).  Trooper Stevenson recounted to these investigators Trooper Ellis's "multiple EEO violations" and expressed trepidation his cooperation could lead to retaliation given Trooper Ellis's position of prominence within the Chambersburg barracks.  (See id. ¶¶ 46-48).  Shortly after the interview, Trooper Ellis confronted Trooper Stevenson and attempted to solicit information about the investigation.  (See id. ¶ 49).  Trooper Stevenson declined to proffer any information but reports feeling intimidated.  (See id. ¶ 50).

Trooper Stevenson received a late-night phone call from Corporal Walter Brunner two days after the encounter with Trooper Ellis.  (See id. ¶ 51).  Corporal Brunner advised Trooper Stevenson to stay at the barracks to complete the overdue reports.  (See id.)  Corporal Brunner represented to Trooper Stevenson that the regional commander inquired about the incomplete reports to Lieutenant Trees, the commander of the Chambersburg barracks.  (See id. ¶ 52).  Lieutenant Trees, in turn, brought the issue to the attention of Sergeant Martin, the Chambersburg staff sergeant, who tasked Corporal Brunner to address the issue

4

with Trooper Stevenson. (See id.) Trooper Stevenson subsequently met with Corporal Brunner in person and detailed to Corporal Brunner his ethical concerns with the reports, namely, his belief completing the reports would require him to lie about the justifications for Trooper Ellis's conduct during the encounters. (See id. ¶ 53). Corporal Brunner reiterated his direction to Trooper Stevenson to complete the reports. (See id. ¶ 54). Corporal Brunner also informed Trooper Stevenson that Sergeant Martin instructed him to issue Trooper Stevenson a negative notation for his failure to complete the reports in a timely fashion. (See id. ¶ 55). Corporal Brunner, however, never entered said notation in Trooper Stevenson's file. (See id.)

Trooper Stevenson reached the end of his probationary period the following month. (See id. ¶ 56). As part of the review process necessary for concluding his probation, he met with Lieutenant Trees on November 15, 2021. (See id. ¶¶ 56-58). Lieutenant Trees informed Trooper Stevenson he intended to recommend PSP retain Trooper Stevenson but extend his probationary period on account of the overdue reports and a "discrepancy" in his "report writing." (See id. ¶ 59). Trooper Stevenson repeated to Lieutenant Trees his misgivings about the reports. (See id. ¶ 62). According to Trooper Stevenson, Lieutenant Trees acknowledged the "situation never should have happened." (See id.) Corporal Colvin also recommended Trooper Stevenson's probationary period be extended and requested Trooper Stevenson receive a write-up related to the incomplete reports. (See id. ¶¶ 59-60). The following day Trooper Stevenson received an email concerning the overdue reports. (See id. ¶ 63).

In December 2021, Trooper Stevenson informed PSP's Department of Internal Affairs that he believed Lieutenant Trees, Sergeant Martin, and Corporal Brunner were retaliating against him for his refusal to comply with unethical orders and to make false statements in his reports. (See id. ¶ 64). During the resultant investigation into his allegations, Trooper Stevenson became aware for the first time of "a negative write-up" in his file. (See id. ¶ 65). Trooper Stevenson avers placing this write-up in his file without his knowledge violates PSP procedures. (See id. ¶ 66).

The ongoing tension between Trooper Stevenson and his superiors surfaced again on February 2, 2022, when Lieutenant Trees sent Trooper Stevenson an email instructing him to complete a particular disciplinary form called a "201." (See id. ¶ 67). The amended complaint fails to articulate the significance of form 201 and its relationship to Trooper Stevenson's incomplete arrest reports. Nevertheless, the instruction from Lieutenant Trees apparently upset Trooper Stevenson because he reports reaching out the same day to PSP's "Member Assistance Program" regarding the effect "this harassment and targeting had on his mental health." (See id. ¶ 68).

## II. **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable

6

reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what . . . the claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alternation in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show "a plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### III. <u>Discussion</u>

Trooper Stevenson's claims arise under Section 1983 of Title 42 of the United States Code.[4] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. <u>See</u> 42 U.S.C. § 1983. The statute is not a source of substantive rights but serves as a mechanism for vindicating rights otherwise protected by federal law. <u>See</u> <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 284-85 (2002); <u>Kneipp v. Tedder</u>, 96 F.3d 119, 1204 (3d Cir. 1996). A Section 1983 plaintiff may seek to hold an official personally liable if that official, acting under the color of state law, "caused the deprivation of a federal right." <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985). The plaintiff must plead the defendant's "personal involvement in the alleged wrongs" by describing their "participation in or actual knowledge of and acquiescence in the wrongful conduct." <u>See</u> <u>Chavarriaga v. N.J. Dep't of Corr.</u>, 806 F.3d 210, 222 (3d Cir. 2015) (quoting <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988)). Thus, a supervisory defendant cannot be held liable for the conduct of a subordinate on a theory of *respondeat superior*. <u>Parkell v. Danberg</u>, 833 F.3d 313, 330 (3d Cir. 2016) (citing <u>Chavarriaga</u>, 806 F.3d at 227). Supervisory liability will attach in only one of two ways: first, when a supervisor "established and maintained a policy, practice[,] or custom which

---

[4] Stevenson styles Count I as a claim under both 42 U.S.C. § 1981 and 42 U.S.C. § 1983. (<u>See</u> Doc. 15 ¶¶ 81-93; <u>see also</u> Doc. 21 at 12-17). Section 1981 does not create an independent, private right of action against government actors; rather, it establishes freestanding statutory rights that can be enforced under Section 1983. <u>See</u> <u>McGovern v. City of Philadelphia</u>, 554 F.3d 114, 120-21 (3d Cir. 2009) (citing, *inter alia*, <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 733 (1989)). We therefore construe Count I as a claim under Section 1983 for, *inter alia*, alleged violations of Section 1981.

8

directly caused the constitutional harm," and, second, when the supervisor either "participated in, directed, or had knowledge of and acquiesced in their subordinates' violations." Id. (quoting Santiago, 629 F.3d at 129 n.5).

We view Trooper Stevenson's amended complaint as asserting two principal claims under Section 1983. First, Trooper Stevenson alleges defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Section 1981 of Title 42 of the United States Code by discriminating against him based on his race. Second, he claims defendants retaliated against him for engaging in activity protected by the First Amendment and Section 1981.[5] Defendants challenge the sufficiency of Trooper Stevenson's pleadings as to all claims.

---

[5] Trooper Stevenson labels Count II as a First Amendment retaliation claim under Section 1983. (Doc. 15 ¶¶ 94-102). Count I, which Trooper Stevenson labels as a claim for "discrimination, hostile work environment, conspiracy" under both Sections 1983 and 1981, also refers to "retaliatory actions." (See id. ¶¶ 82-83, 88). Section 1983 does not allow for standalone claims of employment retaliation; such claims are only cognizable if the alleged conduct violates a constitutional or federal statutory right. See Braddock v. SEPTA, No. 13-06171, 2014 WL 2764862, at *5-6 (E.D. Pa. June 18, 2014) (collecting cases). Trooper Stevenson avers defendants' purported retaliation deprived him of "equal protection under the law" and denied him "the same terms, conditions, privileges, and benefits of their employment." (See id. ¶¶ 82-83). The Equal Protection Clause does not encompass "pure or generic" retaliation claims, see Thomas v. Independence Township, 463 F.3d 285, 298 n.6 (3d Cir. 2006); see also Oras v. City of Jersey City, 328 F. App'x 772, 775 (3d Cir. 2009) (nonprecedential) (quoting Thomas, 463 F.3d at 298 n.6), but Section 1981 does, see CBOCS W., Inc. v. Humphries, 553 U.S. 442, 457 (2008). We construe the amended complaint as raising retaliation claims arising under both the First Amendment and Section 1981.

A.     **Racial Discrimination**

The Equal Protection Clause of the Fourteenth Amendment provides "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Accordingly, states and state actors must treat "similarly situated" persons equally absent a sufficient basis for differentiation. See Stradford v. Sec'y Pa. Dep't of Corr., 53 F.4th 67, 73-74 (3d Cir. 2022) (citations and internal quotation marks omitted). Section 1981 provides, in relevant part, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). Section 1981 provides relief "when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship." See Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006); see also 42 U.S.C. § 1981(b) (the "making and enforcing contracts" comprises "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship").

Racial discrimination by a state actor in an employment context can give rise to claims under Section 1983 for violation of both the Equal Protection Clause and Section 1981. See, e.g., Stewart v. Rutgers, The State Univ., 120 F.3d 426, 432 (3d Cir. 1997) (Equal Protection); Thomas v. City of Philadelphia, 573 F. App'x 193, 196-97 (3d Cir. 2014) (nonprecedential) (citing, *inter alia*, Stewart, 120 F.3d at 432) (same); Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 267-68 (3d Cir. 2010) (citing, *inter alia*, Brown v. J. Kaz, Inc., 581 F.3d 175, 181–82 (3d Cir. 2009) (Section

10

1981); McGovern, 554 F.3d at 120-21 (citing Jett, 491 U.S. at 735). The two claims largely overlap, and courts evaluate both applying Title VII standards. See, e.g., Holt v. Pennsylvania, 683 F. App'x 151, 160 (3d Cir. 2017) (nonprecedential) (citation omitted) (Equal Protection); Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017) (citation omitted) (Section 1981); see also Goodman v. Lukens Steel Co., 777 F.2d 113, 120 (3d Cir. 1985), aff'd, 482 U.S. 656 (1987) (acknowledging overlap).

To plead a discrimination claim related to either Equal Protection Clause or Section 1981, the plaintiff must aver facts supporting a plausible inference defendants engaged in the complained-of conduct with the intention or purpose of discriminating against the plaintiff because of their race. See, e.g., Hassan v. City of New York, 804 F.3d 277, 294 (3d Cir. 2015), as amended (Feb. 2, 2016) (citations omitted) (Equal Protection); Pryor v. NCAA, 288 F.3d 548, 562, 569 (3d Cir. 2002) (citation omitted) (Section 1981). We read Stevenson's complaint as proposing three theories as to how defendants discriminated against him: subjecting him to disparate treatment, subjecting him to a hostile work environment, and conspiring to discriminate against him. The mental-state requirement applies uniformly to all

11

of these discrimination theories.[6]  In the context of race-based employment discrimination, a plaintiff can demonstrate intentional or purposeful discrimination sufficiently by pleading facts suggesting the existence of a similarly situated employee who was treated differently, similar acts of racial discrimination targeted toward other employees, or racial animus on the part of a supervisor.  See Golod v. Bank of Am. Corp., 403 F. App'x 699, 702 & n.2 (3d Cir. 2010) (nonprecedential) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002)).

Trooper Stevenson does not plausibly allege any of the remaining defendants acted with the intent or purpose of discriminating against him based on his race.[7]  Read in the light most favorable to Trooper Stevenson, the amended complaint avers defendants neglected Trooper Stevenson's protestations about Trooper Ellis's misconduct in conducting arrests and pressured Trooper Stevenson to lie in reports

---

[6] To state a claim for hostile work environment or disparate treatment under Section 1983, a plaintiff must aver facts establishing the defendant acted with intent to discriminate based on plaintiff's protected characteristic.  See Starnes v. Butler Cnty. Ct. of Common Pleas, 971 F.3d 416, 426, 428 (3d Cir. 2020) (citations omitted) (Equal Protection hostile work environment); Stewart v. Rutgers, The State Univ., 120 F.3d 426, 432 (3d Cir. 1997) (Equal Protection disparate treatment); Castleberry, 863 F.3d at 263, 266 (citation omitted) (Section 1981 disparate treatment and hostile work environment).  And a Section 1983 claim for conspiracy to discriminate rises and falls with the underlying discrimination claim.  See Fantone v. Latini, 780 F.3d 184, 191 (3d Cir. 2015), as amended (Mar. 24, 2015) (citing Perano v. Township of Tilden, 423 F. App'x 234, 239 (3d Cir. 2011) (nonprecedential)).

[7] Trooper Stevenson avers Trooper Ellis repeatedly expressed racial animus toward minorities.  (See Doc. 15 ¶¶ 30-31).  But Trooper Ellis is no longer a defendant in this lawsuit, see *supra* at 1 n.1, and Trooper Stevenson does not allege the remaining defendants participated in making, were aware of, or had authority to act on Trooper Ellis's offensive statements.  Cf. Parkell, 833 F.3d at 330 (citing Chavarriaga, 806 F.3d at 227).  To the extent Trooper Stevenson seeks to assert a claim against the remaining defendants grounded in Trooper Ellis's conduct, we will grant him leave to amend his pleading.

about those arrests. But nothing in the amended complaint suggests defendants acted, or failed to act, in a particular way toward Trooper Stevenson because of his race or would have acted differently toward him but for his race.[8] Trooper Stevenson's pleading simply does not nudge his conclusory allegations of discrimination into the realm of the plausible. See Iqbal, 556 U.S. at 683 (quoting Twombly, 550 U.S. at 570). We will dismiss Trooper Stevenson's claims for

---

[8] Trooper Stevenson's complaint makes several comparisons between how he was treated and how he alleges troopers of other races were treated. (See Doc. 15 ¶¶ 70, 84, 102). Comparisons between how a defendant treated the plaintiff and another employee of a different race (*i.e.*, a comparator) can, as we noted *supra*, support the inference a defendant intentionally or purposefully discriminated against the plaintiff. See Golod, 403 F. App'x at 702 & n.2; see also, e.g., Burns v. SeaWorld Parks & Ent., Inc., No. CV 22-2941, 2023 WL 3821810, at *7 (E.D. Pa. June 5, 2023) (citing Golod, 403 F. App'x at 702 n.2); Darby v. Temple Univ., 216 F. Supp. 3d 535, 542 (E.D. Pa. 2016) (citing Wilcher v. Postmaster Gen., 441 Fed. App'x 879, 881 (3d Cir. 2011); Erie CPR v. PA Dep't of Trans., 343 F. Supp. 3d 531, 549, 554 (W.D. Pa. 2018) (citing, *inter alia*, Osei v. La Salle Univ., 493 F. App'x 292, 296 (3d Cir. 2012) (nonprecedential)) (discussing equivalent standard for discrimination claims related to 42 U.S.C § 2000d). To serve as a comparator, however, the other employee must be similarly situated in "all relevant aspects," including responsibilities, supervisors, and conduct. Cf. Startzell v. City of Philadelphia, 533 F.3d 183, 203 (3d Cir. 2008) (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992); see also, e.g., Darby, 216 F. Supp. 3d at 542 (collecting cases); Erie CPR, 343 F. Supp. 3d at 554 (citing, *inter alia*, Houston v. Easton Area Sch. Dist., 355 F. App'x 651, 654 (3d Cir. 2009)). It is unclear precisely who Trooper Stevenson seeks to establish as an appropriate comparator, particularly given his probationary status. The amended complaint alleges broadly that "other non-African American troopers would not receive the same treatment in the same or similar circumstances," (see Doc. 15 ¶ 70), defendants "treat black employees . . . less favorably than white employees," (see id. ¶ 84), and Trooper Stevenson was "subjected to harsher discipline than his white counterparts for the same exact offense of incomplete reports," (see id. ¶ 102), but he alleges no facts to support those sweeping assertions. In his opposition brief, he points to only one comparator: Trooper Ellis. (See, e.g., Doc. 21 at 11, 13, 16-17). Again, a lack of factual support fells this theory; Trooper Stevenson pleads no facts to show he and Trooper Ellis are similarly situated, and the only facts he does offer suggest Trooper Ellis was *not* similarly situated—he served in a different role, ostensibly was not in a probationary status, and engaged in entirely different conduct.

discrimination under Section 1983, with leave to amend.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).[9]

### B.     Retaliation

Trooper Stevenson's retaliation claims fare better.  To state a claim for retaliation in violation of the First Amendment or Section 1981, Trooper Stevenson must plausibly allege (1) he engaged in protected conduct, (2) defendants took retaliatory action against him sufficient to deter a person of ordinary firmness from exercising their rights, and (3) there was a causal connection between Trooper Stevenson's protected conduct and defendants' retaliatory action.  See Conard v. Pa. State Police, 902 F.3d 178, 183-84 (3d Cir. 2018) (quoting Mirabella v. Villard, 853 F.3d 641, 649 (3d Cir. 2017)) (First Amendment); Castleberry, 863 F.3d at 26 (Section 1981).  Defendants do not contest Trooper Stevenson engaged in protected conduct; they argue he fails to adequately allege retaliatory action.  (See Doc. 18 at 18-19).  We disagree.

The threshold for retaliatory conduct in the First Amendment context, while "more than *de minimis*," is nonetheless "very low."  See Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 758 (3d Cir. 2019) (quoting O'Connor v. City of Newark, 440

---

[9] The deficiencies identified herein are factual rather than legal in nature and therefore capable of being cured.  We note that defendants also challenge the sufficiency of the facts supporting Corporal Colvin's personal involvement in the alleged discriminatory conduct, (see Doc. 18 at 9-10), the existence of a conspiracy to deprive Trooper Stevenson of his rights, (see id. at 11-12), and any severe or pervasive harassment of Trooper Stevenson, (see id. at 17).  Should Trooper Stevenson choose to amend his discrimination claim, we encourage him, insofar as it is possible to plead additional facts or reframe his claims, to address these concerns in any second amended complaint.

F.3d 125, 128 (3d Cir. 2006)). Any punishment meted out by a state actor to a state employee for exercising free speech rights—even a punishment "as trivial as failing to hold a birthday party" for the employee—can suffice if the action was "intended to punish [the employee] for exercising [their] First Amendment right[s]." See id. (citation omitted). Section 1981 carries what appears, at first blush, to be a slightly higher standard: a retaliatory action must meet the definition of an "adverse employment action" under Title VII. See Castleberry, 863 F.3d at 267. Hence, a retaliatory action is cognizable for purposes of Section 1981 when it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Cf. Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006), as amended (Sept. 13, 2006) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).

We need not address whether a meaningful difference exists between the First Amendment and Section 1981 standards for retaliatory actions because Trooper Stevenson's pleading satisfies both. Trooper Stevenson points to several "punishments" which he avers defendants inflicted on him because of his protected conduct. (See Doc. 21 at 11, 13, 17, 18-19). Specifically, he alleges Lieutenant Trees and Corporal Colvin recommended extending his probationary period. (See Doc. 15 ¶¶ 58-59). Such an extension could plausibly deter a reasonable person from exercising their speech rights. Trooper Stevenson also alleges he was subjected to at least two disciplinary actions: Corporal Colvin requested Trooper Stevenson

15

receive a negative write-up regarding his report writing,[10] (see id. ¶¶ 60-61), and Lieutenant Trees directed Trooper Stevenson to complete a 201 form, which apparently carries disciplinary implications, (see id. ¶ 67). Warnings and notations like the write-up and 201 form can, under certain circumstances, constitute adverse employment actions, see Campo v. Mid-Atl. Packaging Specialties, LLC, 564 F. Supp. 3d 362, 393 n.13 (E.D. Pa. 2021) (collecting cases), and deter speech, cf. Houston Cmty. Coll. Sys. v. Wilson, 595 U.S. ___, 142 S. Ct. 1253, 1262 (2022). Trooper Stevenson has pled facts plausibly supporting retaliatory action. Accordingly, we will deny defendants' motion to dismiss with regard to Trooper Stevenson's retaliation claims.

### IV. Conclusion

We will grant in part and deny in part defendants' motion to dismiss. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:   August 16, 2023

---

[10] It is unclear from the face of the amended complaint whether the write-up in Trooper Stevenson's record is the same write-up as the one requested by Colvin or a separate disciplinary notation. (See Doc. 15 ¶¶ 65-66).