# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JAMES TERRENCE STEVENSON,

        Plaintiff,

    v.

WILLIAM COLVIN, et al.,

        Defendants.

CIVIL ACTION NO. 1:22-CV-445

(MEHALCHICK, J.)

## MEMORANDUM

This action was commenced on March 24, 2022, upon the filing of a complaint by Plaintiff James Terrence Stevenson ("Stevenson") against Defendants Pennsylvania State Police ("PSP"), David Ellis ("Ellis"), William Colvin ("Colvin"), Justin Tkacik ("Tkacik"), Alan Trees ("Trees"), and Aaron Martin ("Martin") (collectively, with Colvin and Trees, "Defendants").[1] (Doc. 1). On September 16, 2022, Stevenson filed the operative amended complaint, asserting claims of race discrimination and retaliation related to Stevenson's employment with PSP. (Doc. 15). Before the Court is a motion for summary judgment filed by Defendants (Doc. 40). For the following reasons, the motion for summary judgment will be **GRANTED.** (Doc. 40).

## I.    BACKGROUND AND PROCEDURAL HISTORY

As a preliminary matter, the Court recognizes that Stevenson has failed to provide a response to Defendants' concise statement of facts. (Doc. 41). This constitutes a violation of Local Rule 56.1, which provides in pertinent part:

---

[1] Defendants PSP, Ellis, and Tkacik were previously terminated from this action and only Defendants Colvin, Trees, and Martin remain.

> **LR 56.1 Motions for Summary Judgment.**
>
> **A motion for summary judgment** filed pursuant to **Fed.R.Civ.P.56, shall be accompanied by a separate, short and concise statement of the material facts**, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.
>
> **The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts**, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.
>
> **Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.**
>
> **All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.**
>
> Local Rule 56.1 (emphasis added).

As such, the factual record relied upon by the Court is largely taken from Defendants' statement of material facts in support of its motion for summary judgment, as well as the amended complaint where appropriate, though factual allegations in the amended complaint will not be accepted as true. (Doc. 15; Doc. 41). Further, to the extent Stevenson has denied any facts in his brief in opposition to Defendants' motion for summary judgment (Doc. 45) and provided supporting citations to the evidentiary record, those objections are noted.[2]

---

[2] Stevenson's brief in opposition contains a "brief summary of relevant facts." (Doc. 45, at 4-9). To comply with Local Rule 56.1, a plaintiff should (1) clearly and unequivocally admit or deny whether each fact contained in Defendants' statement of facts is undisputed and/or material, (2) set forth the basis for any denial if any fact is not admitted in its entirety, and (3) provide a citation to the record that supports any such denial. *Occhipinti v. Bauer*, No. 3:13-CV-1875, 2016 WL 5844327, at *3 (M.D. Pa. Sept. 30, 2016); *Park v. Veasie*, 2011 WL 1831708, *4 (M.D. Pa. 2011); *see also Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F.Supp.2d 490, 493 (E.D. Pa. 2010) (Finding "unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for summary judgment.). To reiterate, the Court will only assign evidentiary value to those facts contained in Stevenson's brief in

Otherwise, in accordance with Local Rule 56.1, the Court has deemed the facts in Defendants' statement of material facts (Doc. 41) as admitted by Stevenson. Such facts have been taken in the light most favorable to Stevenson as the non-moving party, with all reasonable inferences drawn in his favor.

Stevenson is an African American male who began working as a Trooper with PSP on January 18, 2021 and continues to serve as a Trooper for PSP. (Doc. 41, ¶ 6). Shortly after beginning his employment with PSP, Stevenson began receiving negative feedback from supervisors, including Ellis, Colvin, Trees, and Martin. (Doc. 41, ¶¶ 7-19). In 2021, Stevenson received notices on February 1, February 25, March 16, March 21, April 20, May 24, May 25, July 13, and November 17 regarding missing or overdue trainings or reports that he was required to complete. (Doc. 41, ¶¶ 7-14, 18). Stevenson additionally submitted a follow-up for an investigation that Colvin told Stevenson "did not contain any information." (Doc. 41, ¶ 16; Doc. 41-10). Stevenson's dilatoriness and missing information was noted in his evaluations, and Stevenson "signed his probationary trooper evaluation which indicated he had late reports during the rating period." (Doc. 41, ¶ 15; Doc 41-9). From the start of his employment through November 15, 2021, Stevenson received eight report correction notices. (Doc. 41, ¶ 19; Doc. 41-11, at 11).

Stevenson alleges that he encountered instances of racial prejudice as a PSP Trooper, and that he made reports "informing his superiors of the racial hostility, bias, and animosity that existed." (Doc. 41, ¶¶ 21-22; Doc. 15, ¶¶ 101-102). Specifically, Stevenson reported during an Internal Affairs Division interview that Ellis committed Equal Employment

---

opposition that are directly responsive to Defendants' statement of facts and contain citations to the record.

Opportunity Violations. (Doc. 15, ¶¶ 45-46; Doc. 41, ¶ 21; Doc. 41-14). As a result of this disclosure, Stevenson asserts that he faced disciplinary actions: namely that Colvin requested that Stevenson receive a negative write-up; that Trees directed Stevenson to complete a 201 form, which carries disciplinary implications; that Trees and Martin recommended that Stevenson's probationary period be extended; that another supervisor, Corporal Walter Brunner ("Brunner") gave Stevenson a counseling session; and that Martin required Stevenson to make changes to a disturbance report. (Doc. 15, ¶¶ 56-61, 67; Doc. 41, ¶¶ 21-22, 30-32; Doc. 45, at 7-8, 11; Doc. 45-1). Defendants assert in their statement of material facts that "Stevenson cannot produce admissible evidence" supporting any allegations of unlawful retaliation, particularly that any report pulling, counseling sessions, the 201 form, any negative write-up, or the extension of his probationary period had anything to do with Stevenson's complaints of racial bias. (Doc. 41, at 5-8).

In Stevenson's brief in opposition, he disputes Defendants' averment that he cannot produce admissible evidence to support his claims of retaliation. (Doc. 45, at 10-12). However, Stevenson does not provide the Court with any specific citations, with page numbers included, directly responsive to Defendants' contention. (Doc. 45, at 10-12). Instead, Stevenson attaches as an exhibit "PSP's own Investigative Report summarizing [Stevenson's allegations of retaliation]," which he suggests includes evidence supporting his claims. (Doc. 45, at 11-12; Doc. 45-1). The PSP Investigative Report includes statements by Stevenson in which Stevenson expresses that he believes other officers at PSP were upset with him for making reports of Ellis's alleged ethical violations and that he feared he would face disciplinary consequences or not be believed because of Ellis's status. (Doc. 45-1, at 3-4, 7).

Stevenson additionally states that he believed negative feedback he received for untimely reports was in retaliation for his disclosure. (Doc. 45-1, at 8).

On March 24, 2022, Stevenson initiated this action by filing a complaint against Defendants. (Doc. 1). On September 16, 2022, Stevenson filed the operative amended complaint asserting discrimination and retaliation claims. (Doc. 15). On August 16, 2023, the Honorable Christopher C. Connor in United States District Court for the Middle District of Pennsylvania dismissed Stevenson's discrimination-based claims and denied Defendants' motion to dismiss Stevenson's retaliation claims. (Doc. 25; Doc. 26). On September 4, 2023, Defendants filed their answer to the amended complaint. (Doc. 28). On October 1, 2024, Defendants filed a motion for summary judgment and a brief in support, as well as a statement of facts and exhibits. (Doc. 40; Doc. 41; Doc 42). On November 25, 2024, Stevenson filed a brief in opposition and supporting exhibits. (Doc. 45). On February 5, 2025, Defendants filed a reply brief. (Doc. 52). Accordingly, the matter is now ripe for disposition.

## II.    LEGAL STANDARDS

### A.    MOTION FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the

non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See*

6

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential).

    B.    42 U.S.C. SECTION 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III.    DISCUSSION

Defendants move for summary judgment on Stevenson's only remaining claims for retaliation,[3] arguing that Stevenson cannot prove that Defendants took any adverse action

---

[3] Defendants contend that Judge Connor's Memorandum and Order addressing their previous motion to dismiss did not explicitly state whether any claims for hostile work

against him or that there was a causal connection between a protected activity and any adverse action. (Doc. 42, at 6-9). Stevenson responds that Defendants did take an adverse action against him, namely by extending his probationary period, making a negative write up about his performance, and requiring him to complete a 201 form, all of which is detailed in the PSP Investigative Report. (Doc. 45, at 12). Stevenson additionally contends that there was sufficient temporal proximity between such allegedly adverse actions by Defendants and his complaints of racial hostility. (Doc. 45, at 13-14).

To establish a *prima facie* case of retaliation a plaintiff must demonstrate "(1) [a] protected employee activity; (2) [an] adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action*." Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003). An action amounts to retaliation if the conduct is "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (quotation marks and citation omitted). If the plaintiff can establish a *prima facie* case, "the employer may defeat the 'claim by demonstrating that the same adverse action would have taken place in the absence of the

---

environment or conspiracy remained. (Doc. 42, at 4 n.1). However, Judge Connor's Memorandum stated explicitly that "[w]e view Trooper Stevenson's amended complaint as asserting two principal claims under Section 1983. First, Trooper Stevenson alleges defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Section 1981 of Title 42 of the United States Code by discriminating against him based on his race. Second, he claims defendants retaliated against him for engaging in activity protected by the First Amendment and Section 1981." Judge Connor went on to dismiss the discrimination-based claims without prejudice and grant Stevenson leave to amend those claims, leaving only retaliation claims remaining. (Doc. 25; Doc. 26). Stevenson did not file a second amended complaint, and accordingly, this Court views the amended complaint to contain only one remaining claim: a claim for retaliation. (Doc. 15).

protected conduct.'" *Olivieri v. Cnty. of Bucks*, 811 F. Supp. 2d 1112, 1126 (E.D. Pa. 2011) (quoting *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1997)), *aff'd*, 502 F. App'x 184 (3d Cir. 2012). The parties dispute only the second and third element of a *prima facie* retaliation case: whether Stevenson faced an adverse action and whether there is a causal connection between Stevenson's protected activity and any adverse action. *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011).

A.    ADVERSE ACTION

Defendants first argue that Stevenson provides no evidence of an adverse employment action. (Doc. 42, at 6-7). Adverse employment actions include both conduct that affects the terms or conditions of employment and conduct that might "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "In evaluating whether actions are materially adverse, ... 'it is important to separate significant from trivial harms' because '[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.'" *Moore*, 461 F.3d at 346 (second alteration in original) (quoting *Burlington N.*, 548 U.S. at 68). Under this objective standard, the Court does not find that an adverse employment action occurred.

Stevenson first asserts that his negative write-up and 201 form constitute adverse employment actions. (Doc. 45, at 11). It is well settled that "minor or trivial actions that merely make an employee 'unhappy' are not sufficient to qualify as retaliation...." *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 787 (3d Cir. 1998). Several courts within this Circuit have found that the issuance of a written reprimand, without the imposition of

formal discipline, does not satisfy the "adverse employment action" element required to state a *prima facie* claim of retaliation. *See Allen v. Nat'l R.R. Passenger Corp.*, No. CIV.A. 03-CV-3497, 2005 WL 2179009, at *11 n.16 (E.D. Pa. Sept. 6, 2005) ("Because [plaintiff] has failed to argue, let alone demonstrate, how the written reprimands and the investigation altered the terms of his employment, neither incident constitutes an adverse employment action."), *aff'd sub nom.*, *Allen v. Nat'l R.R. Passenger Corp. (Amtrak)*, 228 Fed.Appx. 144 (3d Cir. 2007) (not precedential); *see also Shesko v. City of Coatesville*, 292 F. Supp. 2d 719, 727 (E.D. Pa. 2003) (finding that no "adverse employment action" occurred where plaintiff was issued a written reprimand but did not receive formal discipline). Stevenson has not presented any evidence that he received formal disciplinary consequences as a result of the negative write-up, the 201 form, his counseling sessions, or that his job duties changed whatsoever after he reported alleged racial prejudice in the workplace. (Doc. 15; Doc. 45). Given these facts, the Court finds that the 201 form or any negative write-up does not rise to the level of an adverse employment action.

Stevenson next argues that the recommended extension of his probationary period constitutes an adverse action. (Doc. 45, at 12). However, the record reflects that such an extension never occurred. (Doc. 41, ¶¶ 6-20; Doc. 41-13; Doc. 45, at 7). Stevenson completed his probationary period at the expected time. (Doc. 41, ¶¶ 6-20; Doc. 41-13; Doc. 45, at 7). This Court has previous found that a disciplinary action that is recommended but does not occur does not constitute an adverse action. *See Brown v. Pennsylvania*, No. 1:14-CV-00201, 2017 WL 762009, at *6 (M.D. Pa. Jan. 30, 2017), *report and recommendation adopted*, No. 1:14-CV-201, 2017 WL 748934 (M.D. Pa. Feb. 27, 2017) (finding that no adverse employment action resulted from a threatened disciplinary action that never took place). Therefore, the

recommended extension of Stevenson's probationary period is not an adverse employment action in these circumstances. Accordingly, Stevenson has not presented evidence from which a reasonable jury could return a verdict in his favor an adverse action occurred.

### B.    CAUSATION

Even if Stevenson was able to show an adverse action, Defendants would still be entitled to summary judgment, as there is no evidence of a causal link between Stevenson's reports of racism and his alleged adverse employment actions from which a reasonable jury could return a verdict in his favor. (Doc. 42, at 8-9). Defendants maintain that they had legitimate reasons for recommending the extension of Stevenson's probationary period and issuing any negative write-ups or consequences, namely Stevenson's tardiness and mistakes in his submitted reports. (Doc. 42, at 9).

A causation analysis often, but not exclusively, rests on two key factors: "(1) the temporal proximity between the protected activity and the alleged retaliation and (2) the existence of any pattern of antagonism in the intervening period." *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006) (internal quotations omitted). "The Court measures temporal proximity from the date on which the litigant engaged in his first protect[ed] action." *Gairloch v. Pennsylvania State Univ.*, 84 F. Supp. 3d 407, 418 (M.D. Pa. 2015). "Timing alone raises the requisite inference when it is 'unusually suggestive of retaliatory motive,' but even if 'temporal proximity ... is missing, courts may look to the intervening period for other evidence of retaliatory animus.'" *Jensen*, 435 F.3d at 450 (quoting *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997)). In the absence of unusually suggestive temporal proximity or a pattern of antagonism, courts "consider all of the proffered evidence as a whole to determine whether it may suffice to raise the inference" of causation. *Straka v. Comcast Cable*, 897 F.

Supp. 2d 346, 367 (W.D. Pa. 2012) (quotation omitted); *see also Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 280–81 (3d Cir. 2000) ("Although timing and ongoing antagonism have often been the basis for the causal link, our case law clearly has allowed a plaintiff to substantiate a causal connection for purposes of the *prima facie* case through other types of circumstantial evidence that support the inference."). Regardless of the evidence a plaintiff relies on to establish causation, however, a plaintiff must also satisfy an initial gateway requirement by establishing that the defendant knew of the plaintiff's protected activity. *See Ambrose v. Township of Robinson, Pa.,* 303 F.3d 488, 493 (3d Cir. 2002) ("It is only intuitive that for protected conduct to be a substantial or motiving factor in a decision, the decisionmakers must be aware of the protected conduct.").

In the case at bar, Stevenson first complained about racial bias during an Internal Affairs Division interview on October 19, 2021, when he stated that Ellis committed Equal Employment Opportunity Violations. (Doc. 15, ¶¶ 45-46; Doc. 41, ¶ 21; Doc. 41-14; Doc. 45-1, at 3). Stevenson, without citing to the record, contends that retaliatory actions related to his receiving negative write-ups, negative feedback, and a recommended extension of his probationary period all occurred within the following eleven months. (Doc. 45, at 13). Stevenson does not provide evidence of when the first alleged retaliatory action took place relative to his initial complaint in October 2021. (Doc. 45, at 13). However, through an extensive review of the record, the Court has found that the alleged retaliatory action in closest proximity to Stevenson's initial complaints occurred on November 15, 2021, when Stevenson learned that Trees, Martin, and Brunner would recommend that his probationary period be extended and on November 16, 2021, when Martin sent Stevenson and other Troopers an email regarding overdue reports. (Doc. 45, at 7).

The period between Stevenson's initial report of racial bias and the first alleged adverse employment action is beyond the length of time that is generally held to be unusually suggestive of temporal proximity. *See Blakney v. City of Phila.*, 559 Fed.Appx. 183, 186 (3d Cir. 2014) (not precedential) ("We have found that a temporal proximity of two days is unusually suggestive of causation, but have held that a temporal proximity greater than ten days requires supplementary evidence of retaliatory motive." (citations omitted)); *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (finding temporal proximity not unduly suggestive where three weeks elapsed between protected activity and adverse employment action); *Kier v. F. Lackland & Sons, LLC*, No. CIV.A. 14–897, 2014 WL 7192403, at *17 (E.D. Pa. Dec. 17, 2014) ("Absent some intervening antagonism, Plaintiff cannot rest solely on a temporal proximity of more than one week."); *Abdul-Latif v. Cnty. of Lancaster*, 990 F. Supp. 2d 517, 531 (E.D. Pa. 2014) ("[S]ix days is at the long end of what has been held to be unusually suggestive...."); *but see Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016) ("Where the temporal proximity is not so close as to be 'unduly suggestive,' the appropriate test is 'timing plus other evidence.' " (quotation omitted)); *Shellenberger*, 318 F.3d at 189 ("The amount of time between the protected activity and the alleged retaliation is a circumstance to be considered by a fact-finder in determining if the plaintiff has established the required causation."). Here, there is not sufficient other evidence in the record to infer causation from the intervening period between Stevenson's first report of racial bias and any alleged adverse action. For instance, prior to Stevenson's initial complaint of potential EEO violations in October 2021, Stevenson had received 10 warnings regarding late or missing reports and trainings. (Doc. 41, ¶¶ 7-16, 22; Doc. 41-1; Doc. 41-2; Doc. 41-3; Doc. 41-4; Doc. 41-5; Doc. 41-6; Doc. 41-7; Doc. 41-8; Doc. 41-9; Doc. 41-10). Any write-ups, negative feedback,

counseling sessions, or 201 forms were related to the same conduct: Stevenson's tardiness in submitting required reports and trainings or mistakes in submitted reports. (Doc. 41, ¶¶ 7-16, 22; Doc. 41-1; Doc. 41-2; Doc. 41-3; Doc. 41-4; Doc. 41-5; Doc. 41-6; Doc. 41-7; Doc. 41-8; Doc. 41-9; Doc. 41-10; Doc. 45-1; Doc. 45-2). Thus, the Court finds that there is not sufficient circumstantial evidence, nor temporal proximity, to establish the necessary inference of causation. Accordingly, Defendants motion for summary judgment shall be **GRANTED**. (Doc. 40).

IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment will be **GRANTED**. (Doc. 40). This matter is **DISMISSED**. (Doc. 15). The Clerk of Court shall **CLOSE** this case.

An appropriate Order follows.

BY THE COURT:

Dated: June 16, 2025                 s/ Karoline Mehalchick
                                     **KAROLINE MEHALCHICK**
                                     **United States District Judge**